IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| BRANDON DIETER CANAZA ET AL., | |
| | * |
| Plaintiffs, | |
| | * |
| v. | |
| | *    Civil No. 25-303-BAH |
| KENNETH PLATEK ET AL., | |
| | * |
| Defendants. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiffs Brandon Dieter Canaza, John Doe, Behnam Raja, Nadia Kargar, Douglas E. Price, Farnaz Abassi, Mahsan Samandari, Seyed Mahyar Sabet, Mani Shahidi, Negin Mohabbat, Mohammed Mehdi Masoumi, Neda Boualizadehrostami, Shaghayegh Mazaherian, Sina Rahimi, Ahmad Farrokhi, Ahdyeh Jozaryan, Zara Mansour, Iman Roknidoust Foumani, Anthony Meleo, Azadeh Barazandeh, Amir Miraftab, and Esmaeil Shirdel (collectively "Plaintiffs") brought suit against Kenneth Platek,[1] Acting Director of the Department of Homeland Security's National Vetting Center ("NVC"), and Marco Rubio, Secretary of State, (collectively "Defendants") related to the status of their K-1 nonimmigrant visa (for foreign fiancé(e) of a U.S. citizen) applications. ECF 1. Pending before the Court is Defendants' motion to dismiss the complaint, drop misjoined parties, and sever claims (hereinafter "the Motion"). ECF 11. Plaintiffs filed an opposition, ECF 12, and Defendants filed a reply, ECF 15. All filings include memoranda of law, and the

---

[1] Plaintiffs initially brought suit against Daniel P. Callahan. *See* ECF 1, at 1. In their reply, Defendants note that Kenneth Platek has replaced Daniel P. Callahan as Acting Director of the National Vetting Center. *See* ECF 15, at 1 n.1. As such, pursuant to Fed. R. Civ. P. 25(d), Kenneth Platek is substituted for Daniel P. Callahan. The Clerk will be directed to correct the case docket.

opposition and reply are supported by exhibits.[2]  The Court has reviewed all relevant filings and

finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  Accordingly, for the reasons

stated below, Defendants' Motion is **GRANTED** as described below.

## I.   BACKGROUND

Plaintiffs are eleven United States citizens and their respective Iranian fiancé(e)s who have

applied for K-1 nonimmigrant visas to the United States.  ECF 1, at 3 ¶ 1, at 8–14 ¶¶ 26–81.  Each

Plaintiff filed an I-129F (Petition for Alien Fiancé(e)), which was approved by the United States

Citizenship and Immigration Services (USCIS), filed a DS-160 (Online Nonimmigrant Visa

Application) with the National Visa Center, and had a visa interview at a United States embassy

abroad.  *See id.* at 8–14 ¶¶ 26–81.  After each Plaintiff fiancé(e)'s interview, their visa applications

were "refused" and placed in administrative processing.[3]  *See id.*; *see also* ECF 1-12 (screenshots

---

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page, even where the party-supplied page number differs.

[3] The State Department's website provides the following information regarding administrative processing:

> There are only two possible outcomes for complete and executed U.S. visa applications (absent a visa sanction against a country under Section 243(d) of the Immigration and Nationality Act).  The consular officer will either issue or refuse the visa.  If a visa applicant has not established that he or she is eligible for a visa, the consular officer must refuse that application.  However, in accordance with Department procedures, a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa.  In such cases, refused visa applications warrant further administrative processing.  Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied.  Alternatively, the officer may conclude that the applicant remains ineligible for a visa.  When administrative processing is required, the consular officer will inform the applicant at the end of the interview.  The duration of the administrative processing will vary based on the individual circumstances of each case.  Visa applicants are reminded to apply early for their visas, well in advance of the anticipated travel date.

of each Plaintiff's application status). The complaint alleges that some Plaintiffs were specifically

issued § 221(g) notices[4] and some submitted additional information via a DS-5535 supplemental

form.[5] *See* ECF 1, at 8–9 ¶¶ 31, 33 (Plaintiffs Canaza and Doe were issued § 221(g) refusal and

submitted DS-5535), at 9 ¶ 39 (Plaintiffs Raja and Kargar's application marked as refused), at 10

¶ 43 (Plaintiffs Price and Abassi issued § 221(g) refusal and submitted DS-5535), at 10 ¶ 48

(Plaintiffs Samandari and Sabet issued § 221(g) refusal and submitted DS-5535), at 11 ¶ 52

(Plaintiffs Shahidi and Mohabbat issued § 221(g) refusal and submitted DS-5535), at 11 ¶ 56

(Plaintiffs Masoumi and Boualizadehrostami's application remained in administrative processing,

but not alleging that they received a § 221(g) refusal or submitted a DS-5535); ECF 1-12, at 3

(screenshot of Boualizadehrostami's application status as "refused"); ECF 1, at 11–12 ¶ 60

---

U.S. Department of State, Bureau of Consular Affairs, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [perma.cc/T5L5-DBRW] (last visited Mar. 13, 2026).

[4] The State Department's website explains that a section 221(g) notice means the following:

> A visa refusal under section 221(g) of the Immigration and Nationality Act (INA) means the applicant did not establish eligibility for a visa to the satisfaction of the consular officer, as is required under U.S. law, specifically section 291 of the INA. When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case under 221(g), she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

U.S. Department of State, Bureau of Consular Affairs, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [perma.cc/T5L5-DBRW] (last visited Mar. 13, 2026).

[5] The complaint sometimes refers to a DS-5355 rather than a DS-5535. *See, e.g.*, ECF 1, at 11 ¶ 52. The Court assumes this to be a typographical error.

(Plaintiffs Mazaherian and Rahimi submitted DS-5535 and application remains in administrative processing); ECF 1-13, at 3 (Rahimi's application status marked as "refused"); ECF 1, at 13 ¶ 66 (Plaintiffs Farrokhi and Jozaryan issued § 221(g) refusal and submitted DS-5535), at 13 ¶ 71 (Plaintiffs Mansour and Foumani issued § 221(g) refusal but not alleging that they submitted DS-5535), at 14 ¶ 75 (Plaintiffs Meleo and Barazandeh issued § 221(g) refusal but not alleging that they submitted DS-5535), at 14 ¶¶ 79–80 (Plaintiffs Miraftab and Shirdel submitted DS-5535 and application remains in administrative processing, not alleging that their application is "refused"); ECF 1-13, at 6 (Shiradel's application status marked as "refused").[6]

Plaintiffs Canaza and Doe have been in administrative processing since January 29, 2024, ECF 1, at 8 ¶ 31, Plaintiffs Raja and Kargar since February 14, 2023, *id.* at 9 ¶ 38, Plaintiffs Price and Abassi since May 24, 2024, *id.* at 10 ¶ 43, Plaintiffs Samandari and Sabet since March 9, 2023, *id.* at 10 ¶ 48, Plaintiffs Shahidi and Mohabbat since January 13, 2024, *id.* at 11 ¶ 52, Plaintiffs Masoumi and Boualizadehrostami since January 26, 2024, *id.* at 11 ¶ 56, Plaintiffs Mazaherian and Rahimi since September 8, 2023, *id.* at 12 ¶ 60, Plaintiffs Farrokhi and Jozaryan since June 28, 2024, *id.* at 13 ¶ 66, Plaintiffs Mansour and Foumani since April 5, 2024, *id.* at 13 ¶ 71, Plaintiffs Meleo and Barazandeh since November 17, 2022, *id.* at 14 ¶ 75, and Plaintiffs Miraftab and Shiradel since March 22, 2024, *id.* at 14 ¶ 80.

Plaintiffs allege three counts: (1) an Administrative Procedure Act ("APA") challenge under 5 U.S.C. §§ 555(b) and 706(1) for unreasonable delay and withholding of adjudication of Plaintiffs' visa applications (count one), *id.* at 32–34 ¶¶ 166–74; (2) mandamus relief pursuant to 28 U.S.C. § 1361 (count two), *id.* at 34–37 ¶¶ 175–92; and (3) an APA challenge to Defendants'

---

[6] Based on the parties' briefing, even where not specifically alleged in the complaint for certain Plaintiffs, it appears that the parties assume all refusals were issued pursuant to § 221(g).

DS-5535 and § 221(g) "schemes" under §§ 706(2)(A) and (D) (count three), *id.* at 37–38 ¶¶ 193–203. Defendants' Motion is ripe for review.

## II.    DISCUSSION

Defendants argue that dismissal is proper under Rules 12(b)(1) for lack of subject matter jurisdiction, 12(b)(3) for lack of venue, and 12(b)(6) for failure to state a claim. *See generally* ECF 11-1. Specifically, Defendants begin by arguing that Plaintiffs lack standing to bring count three, which challenges the timing of the DS-5535 collection and use of § 221(g) refusals. *See id.* at 10–11. Alternatively, Defendants argue that Plaintiffs cannot succeed on this claim under Rule 12(b)(6) because the timing of the DS-5535 request is within the Secretary of State's congressionally delegated discretion and does not violate the APA. *See id.* at 12–13. As to the ·challenge to the § 221(g) refusals under this count, Defendants argue that this claim fails under Rule 12(b)(6) as Plaintiffs have not alleged a final agency action. *Id.* at 14–15.

Defendants further contend that dismissal of twenty Plaintiffs for improper venue under Rule 12(b)(3) is warranted because twenty of the twenty-two Plaintiffs have no connection to the District of Maryland. *See id.* at 15–17. Alternatively, Defendants ask that the twenty non-Maryland Plaintiffs' cases be severed under Fed. R. Civ. P. 21, and transferred to the District of Columbia, the Eastern District of Virigina,[7] or the Districts in which they reside, which are not presently clear from the complaint. *Id.* at 17–19. As to Plaintiffs' unlawful withholding and unreasonable delay and mandamus claims, counts one and two, Defendants advance that dismissal is warranted under Rule 12(b)(1) for lack of subject matter jurisdiction as Plaintiffs have named the wrong defendants, *id.* at 21–22, and because Defendants have already undertaken the only discrete, nondiscretionary duty required by issuing the § 221(g) refusals to each Plaintiff, *id.* at

---

[7] Defendant Platek, as head of the NVC, is located within the Eastern District of Virginia, making it a proper venue under 28 U.S.C. 1391(e)(1). *See* ECF 1, at 14 ¶ 82; ECF 11-1, at 16.

22–25. Defendants argue that the doctrine of consular nonreviewability precludes judicial review of the unlawful withholding and unreasonable delay claims.[8] *Id.* at 25–26. Finally, Defendants argue that Plaintiffs have not plausibly stated claims for unreasonable delay, so they should be dismissed pursuant to Rule 12(b)(6). *See id.* at 26–31.

In opposition, Plaintiffs assert that they have standing to bring count three, ECF 12, at 12–19, that venue is proper in this District, *id.* at 19–20, that their claims are properly joined, *id.* at 20–21, that that they have not yet received a final decision on their visa applications and a yet outstanding nondiscretionary duty is still owed to them, *id.* at 22–30, that consular nonreviewability does not preclude review, *id.* at 31–33, and that disposing of the unreasonable delay claims on a motion to dismiss is inappropriate, but even if it were, the delay is unreasonable, *id.* at 33–38. In reply, Defendants assert that Plaintiffs lack standing as to count three because even if they assert a procedural injury, they still have not adequately established traceability and redressability. ECF 15, at 2–3. Even if they have standing, the use of the DS-5535 forms and § 221(g) refusals are within the Secretary of State's broad discretion and Plaintiffs have not meaningfully responded to Defendants' arguments on this point, effectively conceding the points. *Id.* at 3–4. Defendants reiterate that the District of Maryland is not the proper venue for all Plaintiffs except Plaintiffs Canaza and Doe, *id.* at 4–6, that the remaining defendants should be dropped from this action or have their claims severed, *id.* at 6–8, that Plaintiffs have not established that Defendants, particularly Platek, have the power to provide the relief Plaintiffs request, *id.* at 8–9, that they do not have a discrete non-discretionary duty to re-adjudicate visa applications they contend have already been refused, *id.* at 9–11, that consular nonreviewability precludes judicial

---

[8] Defendants note that some courts have treated consular nonreviewability as a jurisdictional question under 12(b)(1), and others have evaluated it under 12(b)(6). *See* ECF 11-1, at 25 n.7.

review, *id.* at 11–12, and that the Court may apply the *TRAC* factors at this stage and should find that Plaintiffs' visa applications have not been unreasonably delayed, *id.* at 12–13.

### A.    Legal Standards

#### 1.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

#### 2.    Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a complaint for improper venue. "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019). "If the court does not hold an evidentiary hearing, 'the plaintiff need only make a prima facie showing that venue is proper.'" *Id.* (quoting *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017)). If the Court determines an action has not been filed in the proper district, the Court has discretion to dismiss the complaint or transfer it to a district where venue is proper. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see also*

*Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017); *Colony Ins. Co. v. Progressive Cas. Ins. Co.*, 531 F. Supp. 3d 1102, 1107 (E.D. Va. 2021).

### 3. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.,* 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.,* 767 F.3d 379, 396 (4th Cir. 2014).

### B. Analysis

#### 1. Count Three—Plaintiffs' Challenge to DS-5535 and § 221(g) "Schemes"— Is Dismissed Under Rule 12(b)(1) as Nonjusticiable.

The Court follows the parties' lead and begins with count three. In count three, Plaintiffs bring an APA challenge under §§ 706(2)(A) and (D) to "Defendants' DS-5535 and 221(g) [s]chemes." ECF 1, at 37. Plaintiffs allege "[t]he essence of Defendants DS-5535 scheme is a

8

decision by Defendants to prohibit Iranian immigrant visa applicants from submitting the DS-5535 prior to their immigrant visa interviews." *Id.* at 38 ¶ 197. Plaintiffs allege that "[t]he action of preventing Iranian [non]immigrant visa applicants from furnishing DS-5535 responses prior to their interviews, is arbitrary and capricious." *Id.* ¶ 198. As to the § 221(g) refusals, Plaintiffs assert that "Defendants have made a decision to use non-final § 221(g) decisions to satisfy their duties to provide final adjudications and throttle legal immigration," that "[t]he INA does not allow this discretion to refuse immigrant visa applications based upon information that was not requested prior to the interview," and that "[s]ection 221(g) was not written to be used with Defendants' administrative processing scheme." *Id.* ¶¶ 200–02.

Defendants first challenge Plaintiffs' standing to bring count three. Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "As the party seeking to invoke federal jurisdiction, Plaintiffs bear the burden of establishing standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 121-269(MSN)(JFA), 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Defendants assert that Plaintiffs Raja, Kargar, Masoumi, Boualizadehrostami, Mansour, Foumani, Meleo, and Barazandeh "lack standing to challenge the alleged DS-5535 'scheme' because they do not assert that they were asked to provide Form DS-5535 following their

respective consular interviews and, thus, they have suffered no injury with respect to the alleged Form DS-5535 'scheme.'" ECF 11-1, at 10–11 (citing ECF 1, at 9 ¶¶ 35–39, at 11 ¶¶ 53–56, at 13–14 ¶¶ 68–75. Defendants also argue that "all Plaintiffs lack standing" to bring this claim "because they cannot demonstrate redressability." *Id.* at 11. "[A] Court order declaring the timing of the collection of Form DS-5535 unlawful following a visa interview would not speed up conclusion of administrative processing on Plaintiffs' visa applications." *Id.* Likewise, "an order declaring" Defendants' use of § 221(g) unlawful "would not cause administrative processing of Plaintiffs' visa applications to conclude any faster." *Id.*

The precise contours of count three are somewhat difficult to parse. First, it is not clear whether Plaintiffs essentially bring two sub-claims in this count, one challenging the DS-5535 "scheme" and the other challenging the § 221(g) "scheme," or whether they allege the decision to implement both schemes together constitutes the allegedly unlawful action. This confusion is only compounded by the fact that not every couple was issued a § 221(g) refusal and directed to submit a DS-5535. *See* ECF 1, at 8–14 ¶¶ 31, 33, 39, 43, 48, 52, 56, 60, 66, 71, 75, 79–80. The prayer for relief does not help clarify the claim. Each of the paragraphs on relief sought concern the alleged "withholding of adjudication" or "delay." *See id.* at 39–40. Plaintiffs do seek a declaration that "Defendants' policies, practices, procedures, or any other actions taken by Defendants to withhold and/or delay the adjudication and issuance" of the visas are "void and without legal force or effect" and are "arbitrary and capricious." *Id.* at 39. But Plaintiffs' prayer for relief omits any specific reference to the § 221(g) or DS-5535 "schemes." *See id.* Plaintiffs do not appear to contest § 221(g) itself, or argue that Defendants cannot refuse visas under § 221(g) or request more information in a DS-5535, only that they cannot do so in a particular way, namely "based upon

10

information that was not requested prior to the interview" and in conjunction with "Defendants' administrative processing scheme." *Id.* at 38 ¶¶ 201–02.

Plaintiffs respond to Defendants' argument that even "[f]or those Plaintiffs who did not receive DS-5535 requests from the consular officers, there is still an injury between the combined conduct of the Defendants['] timing of the DS-5535 information requests and the [§] 221(g) notice for administrative processing schemes." ECF 12, at 14. "If Plaintiffs were permitted to provide further information in anticipation of State Department software arbitrarily determining their application required more information and administrative processing with a Security Advisory Opinion, the unreasonable delay on their adjudication would not occur, regardless if the DS-5535 was used in the specific instance." *Id.* But this point is belied by their own allegations.

At bottom, Plaintiffs contest the delay in adjudication of their visa applications. While they ascribe the root of this delay to Defendants' post-interview request for DS-5535 responses, combined with the issuance of § 221(g) refusals, by Plaintiffs' own account, being placed in administrative processing can occur independent of the DS-5535. That even Plaintiffs who have not been asked to submit a DS-5535 have had their applications placed in administrative processing suggests that their injury (delay in adjudication) does not necessarily flow from the implementation of the DS-5535 "scheme." Plaintiffs appear to argue that, nevertheless, their injury is both procedural and threatened. *See* ECF 12, at 14–16.

The Court need not resolve the question of Plaintiffs' standing definitively, as even if Plaintiffs do have standing, the challenge they advance in count three is not otherwise justiciable. The APA does not apply where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." *See* 5 U.S.C. § 701(a). As the D.C. Circuit has explained:

> Although there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner,* 387 U.S. 136, 140 (1967), agency action is deemed to be

11

committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971) (internal quotations omitted), or there is "no meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney,* 470 U.S. 821, 830 (1985). As the Supreme Court has stated, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action." *Id.*

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.,* 104 F.3d 1349, 1353 (D.C. Cir. 1997) ("*LAVAS*"); *see also Inova Alexandria Hosp. v. Shalala,* 244 F.3d 342, 346 (4th Cir. 2001) ("[J]udicial review is foreclosed if the 'agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent.'" (quoting *Strickland v. Morton,* 519 F.2d 467, 470 (9th Cir. 1975)); *Pharm. Coal. for Patient Access v. United States,* 126 F.4th 947, 964 (4th Cir. 2025) ("Agency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have 'no law to apply.'" (quoting *Heckler,* 470 U.S. at 830–31)).

This Court has previously rejected similar claims brought by the same Plaintiffs' counsel in a different case. *See Yarmohammadi v. Rubio,* Civ. No. 24-2952-BAH, 2025 WL 2043719, at *5 (D. Md. July 21, 2025).[9] There, the Court found that the plaintiffs had failed to respond to a standing argument regarding the DS-5535 scheme claim and an argument that the § 221(g) scheme

---

[9] While that case involved immigrant visas and, as such, cited 8 U.S.C. § 1202(a), by committing to agency discretion the "form and manner" of immigrant visa applications, § 1202(c) commits similar discretion regarding nonimmigrant visas. *Compare* § 1202(a) ("Every alien applying for an immigrant visa and for alien registration shall make application therefor in such form and manner and at such place as shall be by regulations prescribed."), *with* § 1202(c) ("Every alien applying for a nonimmigrant visa and for alien registration shall make application therefor in such form and manner as shall be by regulations prescribed.").

claim (brought separately from the DS-5535 claim) was nonjusticiable, abandoning both of them.[10] *Id.* at *4–7. In doing so, the Court also noted that several other courts had found the DS-5535 challenge nonjusticiable because a challenge to the timing of the DS-5535's issuance is committed to the agency's discretion by statute. *Id.* at *5.

As relevant here, and as explained in *Yarmohammadi*, 2025 WL 2043719, at *6, the District Court for the District of Columbia found:

> [T]he relevant statutory provision, 8 U.S.C. § 1202, grants the agency broad discretion for determining the "form and manner" of visa applications. *Id.* § 1202(a). When considering this very provision, the D.C. Circuit concluded that "the broad language of the statute suggests that the State Department policy is unreviewable." *Legal Assistance for Vietnamese Asylum Seekers ("LAVAS") v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997). Although the *LAVAS* court addressed a different portion of the statutory language, its conclusion applies with equal weight to this provision.

*Dalmar v. Blinken*, No. 23-CV-3315 (DLF), 2024 WL 3967289, at *7 (D.D.C. Aug. 26, 2024). Other courts have also dismissed this type of claim, again finding the challenge to the DS-5535 scheme nonjusticiable under the APA. *See id.* ("The procedure for adjudicating visa applications—namely the submission of DS-5535 following consular interviews—is thus nonreviewable."); *Pars Equal. Ctr. v. Blinken*, No. 24-CV-00001-SI, 2024 WL 4700636, at *6 (N.D. Cal. Nov. 5, 2024) (dismissing challenge to DS-5535 after finding "no judicially manageable standards are available for judging how and when [the] agency should exercise its discretion regarding when to collect the DS-5535" (internal citation and quotation marks omitted)); *Taherian v. Blinken*, No. SACV 23-01927-CJC (ADSX), 2024 WL 1652625, at *6 (C.D. Cal. Jan. 16, 2024) ("[T]he Court will dismiss Count One of Plaintiffs' Complaint [a DS-5535 scheme challenge] as challenging discretionary agency action that is not judicially reviewable."); *Badvipour v. Blinken*,

---

[10] In this suit, Plaintiffs combine the challenge to the DS-5535 timing and § 221(g) refusals into one claim. *See* ECF 1, at 37–38 ¶¶ 193–203.

13

No. 8:24-CV-01458-DOC-KES, 2025 WL 855753, at *8 (C.D. Cal. Jan. 7, 2025) ("Like the court in *Taherian*, the Court agrees that final decisions have not yet been made, thus the timing and manner of visa application review remain within the agency's discretion. Therefore, these claims are non-justiciable." (citation omitted)).[11]

Plaintiffs attempt to distinguish the instant case from *Dalmar* and *Taherian*:

To begin with, this action included the challenge of the Non-final 221(g) Notice Scheme, which shows a pattern of bad faith from Defendant. Secondly, this action updated the DS-5535 Scheme to include ECF No. 1, Exhibit D, April 7, 2024, Declaration of [Former] Defendant Carson Wu to show Defendants did not process the DS-5535, SAO, administrative processing, or the visa application within the rule of reason. Last but not the least, the Supreme Court provided that the APA "requires courts to exercise their independent judgment in deciding whether an agency has acted within its statutory authority, and courts may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2248 (2024) (overruling *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984).) Plaintiffs reject Defendants' adoption of "State Farm scenarios", which were largely based on *Chevron* deference. *Turtle Island Restoration Network v. United States DOC*, 878 F.3d 725, 732 (9th Cir. 2017) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983)[])[.]

ECF 12, at 18–19.[12] None of these purported distinctions move the needle. First, the declaration from Carson Wu does not reference the DS-5535 form at all, let alone demonstrate the existence

---

[11] Defendants appear to argue that the Court should evaluate the justiciability question under Rule 12(b)(6). *See* ECF 11-1, at 12 (arguing that judicial review of this claim is precluded because it is committed to agency discretion under the heading "Even if the Court has jurisdiction over Count Three, such Count fails to state a claim for relief"). Some courts have done so. *See, e.g., Pars Equal. Ctr.*, 2024 WL 4700636, at *6 (noting that dismissal based on non-justiciability was under Rule 12(b)(6)). Nevertheless, the Fourth Circuit has made clear that this question is appropriately decided under Rule 12(b)(1). *See Pharm. Coal. for Patient Access*, 126 F.4th at 964 ("The APA prohibits judicial review of actions committed to agency discretion by law. This defect goes to subject matter jurisdiction." (first citing 5 U.S.C. § 701(a)(2), then citing *Angelex Ltd. v. United States*, 723 F.3d 500, 505–06 (4th Cir. 2013))).

[12] Carson Wu, the Acting Director of the Office of Screening, Analysis and Coordination in the Department of State's Bureau of Consular Affairs' Visa Services Office as of April 2024, has never been a defendant to this action. *See generally* ECF 1.

14

of a policy regarding the timing of issuing DS-5535 forms to visa applicants that would fall outside the delegation of authority over the "form and manner" of visa applications. *See* ECF 1-5 (declaration of Carson Wu); 8 U.S.C. § 1202(c). Nor does the Supreme Court's decision in *Loper Bright* alter the Court's conclusion that the timing of the DS-5535 falls within the Department of State's statutorily authorized discretion. In overturning *Chevron*, the Supreme Court held that under the APA, even where a statute is ambiguous, courts must use traditional tools of statutory interpretation to interpret the true meaning of a statute, rather than defer to a "permissible" interpretation by an agency. *See* 603 U.S. at 398–400, 413. The courts in *Dalmar* and *Taherian*, as in *Yarmohammadi*, determined that the timing of the issuance of the DS-5535 is within the statutory delegation of authority and that there was nothing in the statute against which to measure any purported "arbitrary and capricious" claim. *See Yarmohammadi*, 2025 WL 2043719, at \*6 (citing *Dalmar*, 2024 WL 3967289, at \*7; *Taherian*, 2024 WL 1652625, at \*6). Such a determination remains appropriate after *Loper Bright* so long as it is based on the Court's own interpretation of the statute. *Loper Bright*, 603 U.S. at 395. Plaintiffs do not explain, and the Court does not otherwise discern, how the Supreme Court's decision in *Loper Bright* would change the outcome here. As such, the Court finds that Plaintiffs' challenge to the DS-5535 "scheme" of requiring DS-5535 responses after a visa interview is not justiciable.

Turning to the § 221(g) "scheme," the Court finds that Plaintiffs have not alleged a final agency action necessary to proceed on an APA claim.[13] The APA defines "agency action" as

---

[13] The Court notes the somewhat incongruous nature of the parties' respective positions regarding this count as compared to the unreasonable delay counts. *See Taherian*, 2024 WL 1652625, at \*5 ("The Court has already agreed with Plaintiffs that the government has not made truly final decisions on Plaintiffs' visa applications [in the context of their unreasonable delay claims]. And given that determination, the Court must agree with Defendants that the government has discretion regarding how to run the visa application process, including the 'form and manner' in which Plaintiffs must make their applications.").

15

"includ[ing] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). And agency action is "final" where (1) "the action [ ] mark[s] the 'consummation' of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature"—and (2) "the action [is] one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (quoting *Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948) and *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatl.*, 400 U.S. 62, 71 (1970)). For an agency action to be reviewable, a plaintiff must "identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations." *City of New York v. Dep't of Defense*, 913 F.3d 423, 431 (4th Cir. 2019) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).[14] "A court must conduct a practical, rather than formalistic, review of an agency action to determine whether it is final." *Mayor & City Council of Ocean City v. U.S. Dep't of the Interior*, Civ. No. SAG-24-03111, 2025 WL 3628137, at *3 (D. Md. Dec. 15, 2025) (citing *Fort Sumter Tours, Inc. v. Andrus*, 440 F. Supp. 914, 918 (D.S.C. 1977), *aff'd*, 564 F.2d 1119 (4th Cir. 1977)). "An action that is 'informal, or only the ruling of a subordinate official, or tentative' ordinarily does not conclude an agency's decisionmaking process." *Jake's Fireworks Inc. v. U.S. Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024) (quoting *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018)), *cert. denied sub nom. Jake's Fireworks, Inc. v. Consumer Prod. Safety Comm'n*, 145 S. Ct. 2700 (2025).

---

[14] "This distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers. Courts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials. We are woefully ill-suited, however, to adjudicate generalized grievances asking us to improve an agency's performance or operations." *City of New York*, 913 F.3d at 431.

16

First, Plaintiffs have not responded to this argument, effectively conceding it. *See Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs.*, LLC, 657 F. Supp. 3d 757, 767 (D. Md. 2023) (determining that "a party's failure to respond to an argument ordinarily constitutes a waiver of that issue" in the context of a motion to dismiss); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 674 (D. Md. 2013) (finding that a plaintiff had "abandoned" a claim where they failed to respond to defendant's argument made in a motion to dismiss). Even if they had not conceded the point, the Court would still find that Plaintiffs' challenge to a "decision to use non-final § 221(g) decisions to satisfy their duties to provide final adjudications and throttle legal immigration," ECF 1, at 38 ¶ 200, could not proceed due to the lack of final agency action.[15] Plaintiffs have not pointed to any "consummate[ed]" agency action which this Court could review and have not otherwise plausibly alleged its existence. *See Bennett*, 520 U.S. at 178. And the Court struggles to place the "decision . . . to throttle legal immigration" into the APA's list of "agency action" in § 551(13). This is because the challenged "decision" is too conclusory and abstract to be reviewable under the APA. *See City of New York*, 913 F.3d at 431 (noting that an agency action must be "'circumscribed' and discrete'" (quoting *Norton*, 542 U.S. at 62)); *Biden v. Texas*, 597 U.S. 785, 809 (2022) (noting that judicial review of "an abstract decision apart from specific agency action, as defined in the APA" is not available). Because Plaintiffs have not identified a discrete final agency action relating to the § 221(g) "scheme" challenged in count three, this claim is not justiciable. Count three is dismissed under Rule 12(b)(1).[16]

---

[15] This action is distinct from the issuance of a § 221(g) refusal in each case, which is the subject of counts one and two discussed below.

[16] *See supra* note 11; *see also Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 841 (4th Cir. 2021) (affirming district court's decision that it lacked subject matter jurisdiction where action challenged was not final agency action).

2.      While Venue Is Proper as to Two Plaintiffs, the Court Will Sever the Misjoined Plaintiffs' Claims and Drop Them From This Action.

Defendants argue that venue is improper for all plaintiffs except Plaintiffs Canaza and Doe. ECF 11-1, at 15–17. Accordingly, Defendants ask the Court to dismiss the other twenty plaintiffs. *Id.* at 16–17. Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(e) because Plaintiff Canaza resides in Maryland.[17] ECF 1, at 7 ¶ 25. As Defendants are officers of the United States, venue is proper where:

(A) a defendant in the action resides,

(B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e) (formatting added). "Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." *Id.* There is no dispute that when the complaint was filed, Plaintiff Canaza was a resident of Maryland, making venue proper at least as to his and Plaintiff Doe's claims.

"For purposes of § 1391(e)(1)(C), venue is proper in a multi-plaintiff case if <u>any</u> plaintiff resides in the district." *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *5 (D.S.C. May 11, 2018) (emphasis in original) (citing *Exxon Corp. v. Fed. Trade Commission*, 588 F.2d 895 (3rd Cir. 1978)); *see also Sakthivel v. Cuccinelli*, No. 3:18-CV-03194-CMC, 2020 WL 1698019, at *4 (D.S.C. Apr. 7, 2020) ("Plaintiffs argue and the

---

[17.] The complaint asserts no facts about the residency of the other U.S. citizen Plaintiffs. *See generally* ECF 1.

Government does not dispute that the majority interpretation of 28 U.S.C. § 1391(e)(1)(C) allows venue in a multi-plaintiff case against the Government (where no real property is involved) to be founded on the residency of one plaintiff."), *aff'd sub nom. Sakthivel v. Jaddou*, No. 21-1207, 2023 WL 2888565 (4th Cir. Apr. 11, 2023). Under Fed. R. Civ. P. 21, "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Thus, dismissal of the entire action on this basis is not warranted. However, the Court may drop the twenty non-Maryland plaintiffs if their joinder to Canaza and Doe's claims is improper.

The Court "has broad discretion in deciding whether to grant severance." *Equal Rts. Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007) (citation omitted). "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and 'should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 (4th Cir. 2007) (additional internal quotation marks omitted) (quoting *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)). Under the rule, plaintiffs "may join in one action" if two prongs are satisfied: (1) the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Courts typically evaluate whether claims arise out of the same transaction or occurrence "on a case by case basis." *Saval*, 710 F.2d at 1031. "The 'transaction or occurrence test' of the rule 'would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" *Id.* (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *see*

*also Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). The common question of law or fact prong is similarly flexible: Rule 20(a) "does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact." *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 384 (D. Md. 2011) (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1653 (3d ed. 2001)).

Defendants argue that Plaintiffs claims are not appropriately joined under Rule 20(a) because they "arise out of eleven (11) separate visa applications that cannot be considered the same 'series of transactions or occurrences.'" ECF 11-1, at 17. The Court is inclined to agree as to the unreasonable delay claims. *See Mveng-Whitted v. Virginia State Univ.*, No. 3:11-CV-00842-JAG, 2012 WL 3686285, at *1 (E.D. Va. Aug. 24, 2012) (noting that the same-transaction-or-occurrence "requirement is not met simply by bringing the same legal claims against the same defendants" and severing discrimination claims brought by two different plaintiff when the factual allegations were distinct); *Raw Films, Ltd. v. Does 1-32*, No. 3:11CV532-JAG, 2011 WL 6182025, at *2 (E.D. Va. Oct. 5, 2011) ("Merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." (citation omitted)); *Clements v. Austin*, 617 F. Supp. 3d 373, 377 (D.S.C. 2022) (severing religious discrimination claims brought in multi-plaintiff case because "[a]lthough there are obviously some overlapping issues in the claims of the Plaintiffs, the differences in each individual case would predominate over those common issues of law and fact and would require two dozen mini-trials").

20

True, Plaintiffs also brought count three, and "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded," Fed. R. Civ. P. 20(a)(3). But with count three now dismissed, there is no longer a count dependent upon common factual allegations. Rather, the unreasonable delay (and mandamus) claims of each Plaintiff involve similar legal questions and parallel factual allegations, but they do not arise out of the same transaction or occurrence. *See Mveng-Whitted*, 2012 WL 3686285, at *1; *Raw Films*, 2011 WL 6182025, at *2; *Clements*, 617 F. Supp. 3d at 377. And severance of misjoined parties is available to the Court "at any time." Fed. R. Civ. P. 21.

Importantly, the Court notes that Plaintiffs' counsel has brought similar claims in multi-plaintiff cases across the country, including one "scheme" count (or sometimes two) common to all plaintiffs which serves as the anchor to which the unreasonable delay claims of multiple out-of-district unrelated plaintiffs are tied. *See Yarmohammadi*, 2025 WL 2043719, at *8 n.17. "In some of those cases, the plaintiffs then promptly abandoned prosecution of the policy claim or claims." *Id.* (citing *Mahonak v. Rubio*, No. 8:24-CV-01443-FWS-DFM, 2025 WL 449044, at *8 (C.D. Cal. Feb. 10, 2025)). The Court warned that "[r]epeatedly bringing the same claim—a claim which has uniformly been rejected by courts or is swiftly abandoned—for the purpose of using it as a jurisdictional hook on which to hang the otherwise unrelated claims of others may reflect a pattern of forum shopping . . . ." *Id.* That warning was issued after Defendants' motion to dismiss was fully briefed in this case, but the pattern still informs the Court's exercise of its discretion. *See Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 665 (E.D. Va. 1998) (noting that "the remedy of severance" is a tool courts use to protect against "manipulating the system").

With this background in mind, the Court finds that severance is appropriate here because Plaintiffs' unreasonable delay claims do not arise out of the same transaction or occurrence, even

21

given the flexibility of the standard. There is no apparent connection between couples beyond the fact that each couple is comprised of a United States citizen and Iranian visa applicant fiancé(e) whose application is stuck in administrative processing. *See* ECF 1, at 8–14 ¶¶ 26–81. Taken to its logical end, Plaintiffs' interpretation of the joinder rules would permit every similar unreasonable delay claim ripe at the same time to be brought in *any* judicial district in a *single* action so long as one plaintiff resided there. The only limitation on doing so would appear to be counsel's own judgment. Thus, while it may not be the case that severance of these claims immediately serves the interests of judicial economy, severance of such claims does serve judicial economy in the broader sense.

The Court recognizes that this decision departs from its denial of severance in *Yarmohammadi*. But even there, the Court left open the possibility of severance at a later stage. *Yarmohammadi*, 2025 WL 2043719, at \*10 ("Should it become clear at a later stage that joinder no longer serves the goals of efficiency and convenience (and that severance would aid them), the Court may revisit the question."). And, importantly, because the Court had already ruled on a motion for preliminary injunction prior to the motion to dismiss in that case, it had already necessarily made jurisdictional determinations and considered all the plaintiffs' claims on the merits such that considerations of judicial resources, efficiency, and the law-of-the-case doctrine counseled against severance (and likely subsequent transfer to a different judicial district). *See United States v. Newbold*, 686 F. App'x 181, 185 (4th Cir. 2017) ("[The l]aw-of-the-case doctrine ensures that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999))). Those same considerations are not present here, where the Court has not engaged with the facts of this case beyond the motion to dismiss it currently considers.

22

The Court therefore exercises its discretion in severing Plaintiffs' claims. Typically, upon severance, the Court would transfer the claims to the appropriate venue. *See Wohlford v. Davis*, No. 7:18CV00224, 2019 WL 1294648, at *8 (W.D. Va. Mar. 20, 2019) (severing claims and transferring to the proper venue); *Int'l Painters & Allied Trades Indus. Pension Fund v. McCormick Painting Co., Inc.*, Civ. No. ELH-24-2621, 2025 WL 895391, at *9, *17 (D. Md. Mar. 24, 2025) (explaining when it is appropriate to "transfer severed claims to a jurisdiction with proper venue" but ultimately concluding that severance was not appropriate and instead transferring the entire action); *Colt Def. LLC v. Heckler & Koch Def., Inc.*, No. 2:04CV258, 2004 WL 7350327, at *5 (E.D. Va. Oct. 22, 2004) ( "[A] district court may sever certain claims under Rule 21 of the Federal Rules of Civil Procedure . . . and then transfer an action as to the severed claims under a change of venue statute . . . retaining jurisdiction over only some claims." (alterations in original) (quoting *Dao v. Knightsbridge Int'l Reinsurance Corp.*, 15 F. Supp. 2d 567, 576 (D.N.J. 1999))). As noted, Plaintiffs Canaza and Doe's claims are properly brought in this District. However, the complaint does not include the residence of any other Plaintiffs.[18] As such, the Court is left to find that severance and dismissal of the remaining Plaintiffs is the appropriate solution.[19]

---

[18] The Court also notes that Defendants do not cite 28 U.S.C. § 1406(a), which governs whether to dismiss or transfer cases where venue is improper. *See* ECF 11-1, at 9. However, the Court understands the difficulty Defendants would have engaging in a more fulsome analysis under that statute without knowing the residency of the other Plaintiffs.

[19] The alternative would be to sever each Plaintiff couple's claims, have the Clerk institute a new action for each in which the filing fee is fully paid, and then wait for a motion to transfer to the District of Columbia, the Eastern District of Virginia, or the jurisdiction of the respective Plaintiff's residence. A more efficient approach is to drop the plaintiffs, dismissing them without prejudice, and permitting each Plaintiff couple to institute a new action in the appropriate venue of their choice (if there is more than one proper venue).

23

3.     <u>As to Plaintiffs Canaza and Doe, the Court Has Subject Matter Jurisdiction to Hear Counts One and Two, the Unlawful Withholding and Unreasonable Delay Claims.</u>

Because the other Plaintiffs' remaining claims are severed, this section pertains only to the remaining claims of Plaintiffs Canaza and Doe. Preliminarily, the Court notes that the unlawful withholding and unreasonable delay claims brought under the APA (count one) and the mandamus claim (count two) are subject to identical analysis. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. Aug. 7, 2020) ("The standard for undue delay under the Mandamus Act, however, is identical to the APA standard." (citing *Norton*, 542 U.S. at 63–64)). As noted, Defendants argue that the Court lacks subject matter jurisdiction over these claims because Plaintiffs have named the wrong defendants, ECF 11-1, at 21–22, because Defendants have already undertaken the only clear, nondiscretionary duty required by issuing the § 221(g) refusals to each Plaintiff, *id.* at 22–25, and because the doctrine of consular nonreviewability precludes judicial review of the unlawful withholding and unreasonable delay claims. *Id.* at 25–26.

i.     *The Court Declines to Find that Plaintiffs Lack Standing to Sue the Named Defendants.*

To the extent Defendants argue that "Plaintiffs [have not] name[d] Defendants who have [a] statutory or regulatory duty or authority to provide the relief requested," ECF 11-1, at 21, the Court is unpersuaded that the Secretary of State is powerless to address an unreasonable delay claim. Defendants cite *Yaghoubnezhad v. Stufft*, where the District Court for the District of Columbia held that a plaintiff's unreasonable delay claim could not proceed against the Secretary of State because the Secretary of State "is precluded" from issuing "administrative guidance for the pace of visa adjudications and the completion of administrative processing." 734 F. Supp. 3d 87, 98 (D.D.C. 2024). Another judge of the same court subsequently analyzed *Yaghoubnezhad*'s reasoning in depth and ultimately rejected its conclusion. *Janay v. Blinken*, 743 F. Supp. 3d 96,

24

107 (D.D.C. 2024). The *Janay* court concluded that it "can discern no 'clear textual limitation, on the face of 8 U.S.C. § 1104(a), which would bar the Secretary of State from directing consular officers to conclude matters presented to them 'within a reasonable time.'" *Id.* at 110 (first citing *Yaghoubnezhad*, 734 F. Supp. 3d at 98, then citing *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022)). This Court agrees with that conclusion.

Plaintiffs assert that Defendant Platek—who replaced Callahan as head of NVC as explained *supra* note 1—is "responsible for the overall administration of the NVC, including the vetting conducted on nonimmigrant visa applicants, such as Plaintiffs." ECF 1, at 14 ¶ 82. Other courts have recently found, "any order compelling a consular officer to make a final decision on Plaintiffs' applications would also require the NVC to complete its vetting." *Sharov v. Rubio*, No. 25-CV-1930-MAU, 2026 WL 759476, at *3 (D.D.C. Mar. 18, 2026) (declining to dismiss based on lack of standing for claims against head of NVC); *Network Optix Inc. v. Rubio*, No. 2:24-CV-06505-SK, 2025 WL 1122358, at *2 (C.D. Cal. Feb. 14, 2025) (noting that "it serves little to no practical end to dismiss the complaint—with leave to amend no less—for this reason alone"). The Court agrees and declines to find that Plaintiffs lack standing on this basis.

> ii. *Defendants Owe an Unfulfilled Clear, Non-Discretionary Duty to Finally Adjudicate Plaintiff Doe's Visa Application.*

Defendants argue that there is no "clear, nondiscretionary duty for Defendants or a consular officer to re-adjudicate Plaintiffs' refused visa applications." ECF 11-1, at 20; *see id.* at 22–25. Plaintiffs posit that the "refusal" and placement into administrative processing is not a true refusal, as another decision on their visa applications remains forthcoming. *See* ECF 12, at 22–30. "[T]here is no shortage of supporting case law on both sides" of the question of whether State Department officials owe an unfulfilled clear, nondiscretionary duty stemming from the APA, Immigration & Nationality Act ("INA"), the relevant implementing regulations, and/or the Foreign

25

Affairs Manual ("FAM"). *See Aghamohammadi v. Rubio*, Civ. No. DKC 24-2801, 2025 WL 2687343, at \*6 (D. Md. Sept. 19, 2025) (noting that "there is no shortage of supporting case law on both sides"). The Fourth Circuit has not spoken directly on this issue.

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take.*" *Norton*, 542 U.S. at 64 (emphasis in original). "A regulation can mandate action even if a statute does not." *Lovo v. Miller*, 107 F.4th 199, 212 (4th Cir. 2024) (citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 374 n.10 (2021)). "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command required for [a court] to hold that an agency is compelled to act." *Id.* at 211 (citing *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993)); *see also Gonzalez*, 985 F.3d at 369.

The operative regulation governing the refusal of nonimmigrant visas requires that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a); *see* ECF 1, at 16 ¶ 93, at 17 ¶ 97 (citing 22 C.F.R. § 41.121(a) and (b)). Subsection (b) describes the procedures a consular officer follows in refusing a visa. *See* 22 C.F.R. § 41.121(b)(1) ("When a consular officer knows or has reason to believe a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal. . . ."). The regulation further mandates that "[n]onimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of State, by consular supervisors, or a

designated alternate, to ensure compliance with laws and procedures." *Id.* § 41.121(c). As relevant

here:

> If the ground(s) of ineligibility may be overcome by the presentation of additional
> evidence, and the applicant has indicated the intention to submit such evidence, a
> review of the refusal may be deferred for not more than 120 days. If the reviewing
> officer disagrees with the decision and he or she has a consular commission and
> title, the reviewing officer can assume responsibility and readjudicate the case. If
> the reviewing officer does not have a consular commission and title, he or she must
> consult with the adjudicating officer, or with the Visa Office, to resolve any
> disagreement.

*Id.* The mandatory language here, that a refusal "*must* be reviewed," and such review "may be

deferred for *not more than* 120 days," *id.* (emphasis added), indicates that the consular officer has

a duty to further process a temporarily refused visa. True, the next sentence contains permissive

language. *See id.* (noting the officer "*can* assume responsibility and readjudicate the case"

(emphasis added)). But reading the context with the whole section, this permissive language

speaks to *who* may conduct the mandated review of a refused visa, not whether it must be done at

all. *See Network Optix Inc.*, 2025 WL 1122358, at *8 (finding that plaintiffs had "plausibly

allege[d] that the Department failed to follow its own 'refusal procedures' under 22 C.F.R. §

41.121(b)(1) or its secondary refusal 'review' procedures under 22 C.F.R. § 41.121(c)").[20]

Indeed, communication from the U.S. embassies appears to confirm the general

understanding that the "refusal" status triggered after a visa interview is only temporary pending

further review. *See* ECF 1-2, at 1 (letter from U.S. Embassy Ankara to congressional

representative noting that "this case will remain in 'refused' status until the administrative

---

[20] The case on which Defendants primarily rely, *Sakhi v. Blinken*, did not evaluate the language of
§ 41.121(b) or (c) in conjunction with its analysis of subsection (a). Civ. No. DLB-24-1376, 2025
WL 904141, at *5 (D. Md. Mar. 25, 2025) (finding that "[t]he consular officer satisfied their
nondiscretionary duty to adjudicate Arefi's application when they refused his visa application due
to his ineligibility under § 221(g)").

processing is concluded and a decision is made regarding [the plaintiff's] eligibility for a visa"); ECF 1-4, at 1 (email sent from U.S. Embassy Frankfurt confirming receipt of medical examination report and stating that "[a]s soon as the [administrative] processing of your application is complete and the outcome of your case is known, you will be contacted"); ECF 1-8, at 1 (providing instructions on submitted the DS-5535 and noting that "[b]efore we can continue processing your visa application, we need you to send the information and/or documents marked urgent to us"); ECF 1-11, at 1 (U.S. Virtual Embassy Iran website advising that "[a]t the end of your immigrant visa interview, the consular officer will inform you whether your visa application is approved or denied. Some visa applications require further administrative processing, which takes additional time after the visa applicant's interview by a consular officer"); ECF 1-13, at 1 (letter from the U.S. Embassy Ankara noting that "[y]our visa application is temporarily refused under section 221(g)"); ECF 1-14, at 6 (instructions from the U.S. Embassy in Abu Dhabi noting that "[i]f during your interview the consular officer asked you to submit additional documents, please follow the instructions the officer gave you on the blue refusal sheet after the interview. (If your case is pending review of documents, the consular officer will issue a temporary refusal until he/she receives the documents.)").[21]

In *Yarmohammadi*, this Court found "that Defendants ha[d] an unfulfilled mandatory, nondiscretionary duty owed to Plaintiffs [immigrant visa applicants] and the § 221(g) refusals d[id] not satisfy the consular officers' duties under 22 C.F.R. § 42.81(a) when Plaintiffs remain[ed] in indefinite administrative processing awaiting a subsequent decision." 2025 WL 2043719, at *7 (citing *Parva v. Blinken*, Civ. No. TDC-23-3287, 2024 WL 4042466 (D. Md. Sept. 4, 2024);

---

[21] Some of this evidence pertains to Plaintiffs who have been severed from this suit. Nevertheless, it is still relevant to understanding how the State Department interprets this "refused" status as temporary.

*Mehneh v. Blinken*, No. 24-CV-1374-ZMF, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024); *Iqbal v. Blinken*, No. 2:23-CV-01299-KJM-CSK, 2024 WL 3904959, at *5 (E.D. Cal. Aug. 22, 2024)). The Court is not persuaded that it should reach a different conclusion here.

Further, the Court is not convinced that § 555(b) does not also impose the requisite duty. The Court acknowledges that, as Defendants have pointed out, *see* ECF 11-1, at 24–25, other judges of this Court have determined that no clear nondiscretionary duty remained unfulfilled in similar immigrant and non-immigrant visa cases which have been "refused" yet remain in administrative processing. *See, e.g., Aghamohammadi*, 2025 WL 2687343, at *9; *Sakhi v. Blinken*, Civ. No. DLB-24-1376, 2025 WL 904141, at *5 (D. Md. Mar. 25, 2025); *Arefi v. Rubio*, Civ. No. 24-02031-JRR, 2026 WL 706593, at *8 (D. Md. Mar. 13, 2026); *Kaveh v. Rubio*, Civ. No. 24-0977-ABA, 2025 WL 814533, at *4 (D. Md. Mar. 13, 2025); *Turner v. Blinken*, Civ. No. RDB-24-318, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024); *Ishaq v. Schofer*, Civ. No. 24-207-TJS, 2024 WL 3729107, at *3–5 (D. Md. Aug. 8, 2024). These decisions stem in large part from the D.C. Circuit's decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *4 (D.C. Cir. July 24, 2024), and other district court decisions adopting that reasoning. *See, e.g., Sakhi*, 2025 WL 904141, at *6; *Aghamohammadi*, 2025 WL 2687343, at *9. However, district courts in the District of Columbia have determined that *Karimova* is not binding on them and have declined to follow its reasoning. *See Nikjooy v. Rubio*, 804 F. Supp. 3d 76, 82 (D.D.C. 2025) (noting that *Karimova*'s interpretation of whether § 555(b) imposes a clear nondiscretionary duty "places too much emphasis on the current language in the FAM—which does not carry the force of law . . . — and too little emphasis on the allegations in a plaintiff's complaint and the realities of the visa-adjudication process" (citations omitted)); *Sharov*, 2026 WL 759476, at *3 ("This Court has already held that *Karimova* is not binding and that the analysis is not persuasive. . . . Indeed, the

29

majority[1] of the courts in this District to have confronted the question have reached the same conclusion." (citations omitted)). "It is impossible to square the Secretary's assertion that placement in 'administrative processing' was a *final* disposition of [the plaintiffs'] visa application[s] with the allegations in [the] complaint." *Nikjooy*, 804 F. Supp. 3d at 82; ECF 1, at 8–14 ¶¶ 26–81 (alleging that each application was placed in administrative processing following a visa interview).

While some courts have determined that the non-finality of a § 221(g) refusal does not determine the existence of a duty, *see, e.g.*, *Shabani v. Rubio*, No. 7:24-CV-444, 2025 WL 1085075, at *7 (W.D. Va. Apr. 10, 2025) (concluding that "there is no mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused"), *Aghamohammadi*, 2025 WL 2687343, at *8 (finding that the INA and its implementing regulations require no more than "a simple refusal" of an immigrant visa petition), the Court disagrees. Persuasive here, "[t]he Ninth Circuit has held that a visa application has not been refused "within the meaning of 22 C.F.R. § 42.81" if the refusal under Section 221(g) 'is not a final decision.'" *Soroush v. Rubio*, No. 2:24-CV-06490-CAS-JCX, 2026 WL 253452, at *4 (C.D. Cal. Jan. 30, 2026) (citing *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997)). "This court continues to adhere to the view that consular officials have a non-discretionary duty to *fully* adjudicate a visa application. Issuing a final decision on a visa application is plainly a discrete agency action, and it is required by both the APA and federal regulations." *Nikjooy*, 804 F. Supp. 3d at 85 (emphasis added). For the reasons described above, this Court respectfully disagrees with the other courts finding the opposite and finds that Defendants still owe Plaintiffs a clear, nondiscretionary duty to adjudicate their temporarily "refused" non-immigrant visa applications. *See id.*; *see also Sluev v. Rubio*, No. 25-CV-899

30

(APM), 2026 WL 507894, at *1 (D.D.C. Feb. 24, 2026) (declining to dismiss unreasonable delay claim based on a purported lack of unfulfilled nondiscretionary duty) (citing, e.g., 22 C.F.R. § 41.121(c)); *Moradi v. Rubio*, No. 24-CV-02569 (APM), 2025 WL 2779931, at *1 (D.D.C. Sept. 30, 2025) (same).   Dismissal is not warranted based on a purported absence of a clear, nondiscretionary duty to issue a final decision on Plaintiff Doe's temporarily "refused" visa application.

    *iii.*  *Consular Nonreviewability Does Not Preclude This Court's Review.*

Defendants argue that the doctrine of consular nonreviewability precludes judicial review here. *See* ECF 11-1, at 25–26. The doctrine of consular nonreviewability "instructs that ordinarily, 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'" *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)).  The applicability of consular nonreviewability depends upon the finality of the § 221(g) refusals. *See Jahangiri v. Blinken*, Civ. No. DKC 23-2722, 2024 WL 1656269, at *6 (D. Md. Apr. 17, 2024) (collecting cases); *see also Ramizi v. Blinken*, 745 F. Supp. 3d 244, 258 (E.D.N.C. 2024), *appeal dismissed,* No. 24-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024) (collecting more cases).

 "In the [] context of assessing whether a consular officer has taken a final action that is nonreviewable under the doctrine of consular nonreviewability, courts have frequently found that a refusal of a visa under 8 U.S.C. § 1201(g) [INA § 221(g)] was not actually final where the State Department specifically noted that the case was placed in 'administrative processing' or requested additional information." *Parva*, 2024 WL 4042466, at *3.  Because it finds that the § 221(g) refusal was not a final adjudication of Plaintiff Doe's visa application, the doctrine of consular

nonreviewability does not apply. *Nikjooy*, 804 F. Supp. 3d at 83 ("This court follows the majority approach and determines that [the plaintiff's] action is properly understood as an attempt to compel an adjudication that has been unreasonably delayed, rather than one aimed at changing a final decision that has already been rendered."); *see also Yarmohammadi*, 2025 WL 2043719, at *7 (finding consular nonreviewability inapplicable where § 221(g) refusals are not final).

      4.     <u>Plaintiffs Canaza and Doe Have Failed to State a Claim on Which Relief Can be Granted.</u>

Defendants further contend that Plaintiffs' unreasonable delay and mandamus claims fail on the merits.[22] *See* ECF 11-1, at 26–13. Again, because the other Plaintiffs' claims have been severed, *see supra* Section II.B.2, the Court only evaluates this argument as to Plaintiffs Canaza and Doe. "The Supreme Court has not, so far, provided clear guidance on how to determine how long is too long to wait for an agency adjudication. But most lower courts have followed the D.C. Circuit's decision in" *Telecommunications Research & Action Ctr. V. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). *Gonzalez*, 985 F.3d at 375. These factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotations and citation marks omitted).

---

[22] As with the jurisdictional analysis, the APA and mandamus claims are evaluated together on the merits. *See Kangarloo*, 480 F. Supp. 3d at 142.

Plaintiffs contend that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." ECF 12, at 33. While the Fourth Circuit has noted that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage," *Gonzalez*, 985 F.3d at 375, district courts have routinely determined that they may still apply the *TRAC* factors to evaluate whether an unreasonable delay claim meets federal pleading standards. *See, e.g., Parva*, 2024 WL 4042466, at *5; *Arefi*, 2026 WL 706593, at *7; *Ishaq*, 2024 WL 3729107, at *6. A court may find that a plaintiff has failed to state an unreasonable delay claim when the "*TRAC* factors weigh decisively in [Defendants'] favor." *Arefi*, 2026 WL 706593, at *7. This Court will follow suit and evaluate the sufficiency of this claim.

"Courts generally consider the first and second *TRAC* factors together." *Jahangiri*, 2024 WL 1656269, at *8 (citations omitted). Plaintiff Doe's fiancé visa application has been in administrative processing since January 29, 2024, *see* ECF 1, at 8–9 ¶¶ 31, about 26 months at the time of this writing.[23] Plaintiffs contend that the first and second *TRAC* factors favor them because Congress set out a timetable for decisions of 180 days in 8 U.S.C. § 1571(b) and because Defendants do not follow a rule of reason in adjudication of applications undergoing administrative processing. ECF 12, at 35–37. Courts have resoundingly rejected the idea that this language is a congressional timetable for adjudicating visa applications. *See Jahangiri*, 2024 WL 1656269, at *10 (collecting cases). Plaintiffs admit that this language is "merely precatory," but explains that a delay must still be measured by such language. ECF 12 at 36. But the case Plaintiffs rely on,

---

[23] "Courts measure the length of the delay 'from the last Government action to the issuance of the opinion.'" *Adan v. Blinken*, No. CV 24-591 (JDB), 2024 WL 5168521, at *4 (D.D.C. Dec. 19, 2024) (quoting *Meyou v. U.S. Dep't of State*, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022)); *see also Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-CV-1136 SCR, 2024 WL 4505648, at *9 n.8 (E.D. Cal. Oct. 16, 2024).

33

*Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816–17 (D.C. Cir. 2024), discussed a specific statute and contextual clues pertaining to that statute that are not relevant here.

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-CV-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Courts have routinely found that delays of months longer than Plaintiffs have waited here—even upwards of years longer—are not unreasonable. *See Ishaq*, 2024 WL 3729107, at *7 (collecting cases); *Parva*, 2024 WL 4042466, at *6 (same); *Majlesi v. Rubio*, No. CV 25-614 (LLA), 2026 WL 654377, at *8 (D.D.C. Mar. 9, 2026) (same); *Mokuolu v. Mayorkas*, Civ. No. RDB-24-817, 2024 WL 4783542, at *7 (D. Md. Oct. 1, 2024) ("This approximately 2.5-year processing delay falls within the category of delays that courts often deem reasonable."). Indeed, a judge of the District Court for the District of Columbia, where many unreasonable delay claims are adjudicated, noted that "the law in [that] Circuit suggests that the about 32-month delay . . . does not violate the APA." *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022). Thus, these factors weigh against Plaintiffs.[24]

The third and fifth factors, human welfare and interests prejudiced, also tend to merge. *See Jahangiri*, 2024 WL 1656269, at *11. Plaintiffs Canaza and Doe note significant harm from being separated. Plaintiff Doe, who proceeds under a pseudonym, is "a gay man living in Iran engaged to an U.S. citizen [Canaza]." ECF 1, at 8 n.1. "Plaintiff Canaza has suffered multiple panic attacks over concern for Plaintiff Doe who is still living in a country where his sexual identity puts his life at risk because of the visa delay." ECF 1, at 9 ¶ 34. Defendants argue that "concerns about family

---

[24] While the Court relied on 22 C.F.R. § 41.121(c) in concluding that Defendants owe Plaintiffs an unfulfilled nondiscretionary duty to adjudicate the visa application, the Court does not find (and Plaintiffs do not argue) that this section provides the requisite timetable by which to measure delays. It says only that "a review of the refusal may be deferred for not more than 120 days," *id.*—nothing about at what time the review must conclude.

34

separation and unity are generally insufficient to weigh in favor of a visa applicant." ECF 11-1, at 29 (citing *Memon v. Blinken*, No. 22-0754 (CKK), 2023 WL 1438396, at \*3 (D.D.C. Feb. 1, 2023)); *see also id.* at 30 ("Expediting review of the visa applications at issue here over the applications of others would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the Agency's prioritization decisions and place Plaintiffs at the front of the line.") (citing *Pushkar v. Blinken*, No. 21-2297 (CKK), 2021 WL 4318116, at \*9 (D.D.C. Sept. 23, 2021); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017)). The Court will not minimize the very real distress caused by prolonged family separation. Indeed, some courts have found that "[s]eparation from family members and its collateral consequences can provide a basis for these factors to weigh in favor of the plaintiff." *Parva*, 2024 WL 4042466, at \*6 (collecting cases). While the Court understands Defendants' need to adjudicate other applications involving similar considerations of family separation, Plaintiff Doe's sexuality and the fears associated with how it could subject Plaintiff Doe to harm in Iran exacerbate the human interests at stake here. This factor weighs in Plaintiffs' favor.

Regarding the fourth factor, higher or competing priorities, "courts often find this factor to "carr[y] the greatest weight" and have " 'refused to grant relief, even [though] all the other factors considered in *TRAC* favored it, where a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain.'" *Jahangiri*, 2024 WL 1656269, at \*11 (alterations in *Jahangiri*) (quoting *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Plaintiffs argue that "[s]ince the administrative processing requests are <u>NOT</u> addressed or resolved on a first-in-first-out basis, it is evident that no queue

35

exists," this factor tips in their favor. ECF 12, at 37 (emphasis in original) (citing ECF 1-5, at 5 (declaration of Carson Wu)). But just because there is no first-in-first-out line,[25] does not mean that there is no queue prioritized some other way or that granting the requested relief would not impermissibly allow Plaintiffs to jump ahead of other similarly situated applicants. This factor does not favor Plaintiffs.

Finally, Plaintiffs argue that Defendants have engaged in bad faith by "misleading the Court on the existence of a queue, and [providing] conflicting, inconsistent, and misleading characterizations of 221(g) refusal for administrative processing." ECF 12, at 38. While the Court certainly understands the frustration caused by the delay, Plaintiffs point the Court to no caselaw finding such representations to be made in bad faith such that this factor would tip in Plaintiffs' favor. The Court will consider it neutral. *See Majlesi*, 2026 WL 654377, at *9 (finding that this factor did not weigh in plaintiffs' favor upon similar allegations).

As Judge AliKhan has similarly held, "[t]he most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss, and factors three and five are not strong enough to justify the opposite conclusion." *Id.* (quoting *Meyou v. U.S. Dep't of State*, No. 21-CV-2806, 2022 WL 1556344, at *5 (D.D.C. May

---

[25] The Wu declaration notes that multiple factors prohibit maintaining a first-in-first-out system, including:

> the extent of review and coordination required, the amount of derogatory information, which other agencies have responsive information, the timing of when each partner agency completes its review, and a variety of other factors, such as emergent circumstances such as COVID, SAO request volume, or the need to facilitate travel in the national interest (e.g., for the U.S. government to comply with international obligations to facilitate travel to the United Nations) or to address emerging threats, and foreign policy priorities.

ECF 1-5, at 5.

17, 2022)).  As such, Plaintiffs Doe and Canaza's unreasonable delay and mandamus claims are dismissed for failure to state a claim.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted in part and denied in part, their motion to sever and drop misjoined Plaintiffs is granted, and their motion to dismiss for failure to state a claim is granted as to the remaining Plaintiffs.  The end result is that the relief requested in Defendants' Motion (dismissal of all claims) is granted.

A separate implementing order will issue.

Dated: <u>March 24, 2026</u>                                                            <u>        /s/        </u>
                                                                                  Brendan A. Hurson
                                                                                  United States District Judge

37